# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF OREGON

| | |
|---|---|
| **FIRST INTERSTATE BANK**, | Case No. 3:17-cv-1877-SI |
| Plaintiff, | **OPINION AND ORDER** |
| v. | |
| **VHG AVIATION, LLC; VGH AVIATION, LLC; JAMES VALVANO; CHRISTOPHER GILCHRIST; and TSE, INC.**, | |
| Defendants. | |

David W. Criswell and Bruce H. Cahn, LANE POWELL PC, 601 SW Second Avenue, Suite 2100, Portland, OR 97204. Of Attorneys for Plaintiff.

Edwin C. Perry, TONKON TORP LLP, 1600 Pioneer Tower, 888 SW Fifth Avenue, Portland, OR 97204; Lawrence J. Moran and Luke P. Moran, JOYCE, CARMODY & MORAN, PC, 9 N. Main Street, Suite 4, Pittston, PA 18640. Of Attorneys for Defendants.

**Michael H. Simon, District Judge.**

Two motions are pending before the Court: Defendants' Motion to Transfer Venue Pursuant to 28 U.S.C. § 1404(a) (ECF 10); and Plaintiff's Motion for Summary Judgment (ECF 13). In response to Plaintiff's request for summary judgment, Defendants rely on Rule 56(d) of the Federal Rules of Civil Procedure and argue that Plaintiff's motion should be denied or deferred. Defendants request sufficient time to take discovery of facts that Defendants contend are exclusively in the possession of Plaintiff but may support an affirmative defense. For

PAGE 1 – OPINION AND ORDER

the reasons that follow, Defendants' Motion to Transfer Venue Pursuant to 28 U.S.C. § 1404(a) is denied, and Plaintiff's Motion for Summary Judgment is deferred.

## STANDARDS

### A. Transfer of Venue Pursuant to Section 1404(a)

A district court may transfer any civil action to any other district court pursuant to 28 U.S.C. § 1404(a). That statute provides:

> For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented.

28 U.S.C. § 1404(a). Consideration of a motion to transfer venue under § 1404(a) requires two findings. First, unless all parties consent, the court being asked to transfer venue must determine whether the transferee court is one in which the action originally might have been brought. Second, the court that is being asked to transfer venue must determine whether transfer is appropriate, considering the convenience of parties and witnesses and the interest of justice. *See Hatch v. Reliance Ins. Co.*, 758 F.2d 409, 414 (9th Cir. 1985). As explained by the Ninth Circuit,

> the district court has discretion to adjudicate motions for transfer according to an individualized, case-by-case consideration of convenience and fairness. A motion to transfer venue under § 1404(a) requires the court to weigh multiple factors in its determination whether transfer is appropriate in a particular case. For example, the court may consider: (1) the location where the relevant agreements were negotiated and executed, (2) the state that is most familiar with the governing law, (3) the plaintiff's choice of forum, (4) the respective parties' contacts with the forum, (5) the contacts relating to the plaintiff's cause of action in the chosen forum, (6) the differences in the costs of litigation in the two forums, (7) the availability of compulsory process to compel attendance of unwilling non-party witnesses, and (8) the ease of access to sources of proof. Additionally, the presence of a forum-selection clause is a significant factor in the court's § 1404(a) analysis. We also conclude that the relevant public policy of the forum state, if any, is at least as significant a factor in the § 1404(a) balancing.

*Jones v. GNC Franchising, Inc.*, 211 F.3d 495, 498-99 (9th Cir. 2000) (quotation marks, footnotes, and citations omitted).

The ordinary analysis of a motion to transfer venue under § 1404(a) changes, however, when the parties have formed a contract that includes a valid forum-selection clause. *Atl. Marine Const. Co., Inc. v. U.S. Dist. Court for W. Dist. of Tex.*, 134 S. Ct. 568, 581 (2013). A court must give a forum-selection clause "controlling weight in all but the most exceptional cases." *Id.* at 579 (citation and quotation marks omitted). The party seeking a forum other than the contractually agreed-upon forum identified in the forum-selection clause bears the burden of showing exceptional circumstances that render the selected forum inappropriate. *Id.* at 581. In evaluating whether a party has established that the agreed-upon forum is inappropriate, a court should refrain from "unnecessarily disrupt[ing] the parties' settled expectations" when the parties have agreed "in advance to litigate disputes in a particular forum." *Id.* at 583. In addition, when the parties' agreement includes a forum-selection clause, a district court "should not consider arguments about the parties' private interests. . . . A court accordingly must deem the private-interest factors [including inconvenience to the parties] to weigh entirely in favor of the preselected forum." *Id.* at 582. In such a case, a district court may only consider arguments concerning public-interest factors, which will "rarely" support a forum other than the parties' contractually agreed-upon forum. *Id.* "In all but the most unusual cases, therefore, 'the interest of justice' is served by holding parties to their bargain." *Id.* at 583.

**B. Summary Judgment and Rule 56(d)**

A party is entitled to summary judgment if the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party has the burden of establishing the absence of a genuine dispute of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The court must view

the evidence in the light most favorable to the non-movant and draw all reasonable inferences in the non-movant's favor. *Clicks Billiards Inc. v. Sixshooters Inc.*, 251 F.3d 1252, 1257 (9th Cir. 2001). Although "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge . . . ruling on a motion for summary judgment," the "mere existence of a scintilla of evidence in support of the plaintiff's position [is] insufficient . . . ." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252, 255 (1986). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citation and quotation marks omitted).

Under certain circumstances, it may be appropriate for a court to defer considering a motion for summary judgment, or even to deny it without prejudice, when the party opposing the motion shows that it cannot yet present facts essential to justify its opposition. Rule 56(d) of the Federal Rules of Civil Procedure provides:

> WHEN FACTS ARE UNAVAILABLE TO THE NONMOVANT. If a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may:
>
> (1) defer considering the motion or deny it;
>
> (2) allow time to obtain affidavits or declarations or to take discovery; or
>
> (3) issue any other appropriate order.

Fed. R. Civ. P. 56(d).

A court may deny a motion under Rule 56(d) that lacks a sufficient showing to support further discovery, especially when it is clear that the evidence sought is almost certainly nonexistent or is the object of pure speculation. *See VISA Int'l Serv. Ass'n, v. Bankcard Holders of Am.*, 784 F.2d 1472, 1475-76 (9th Cir. 1986). A lesser showing of specificity may be

PAGE 4 – OPINION AND ORDER

appropriate, however, before discovery has taken place, because the party making a Rule 56(d) motion "cannot be expected to frame its motion with great specificity as to the kind of discovery likely to turn up useful information, as the ground for such specificity has not yet been laid." *Burlington N. Santa Fe R.R. Co. v. Assiniboine & Sioux Tribes of Fort Peck Reservation*, 323 F.3d 767, 774 (9th Cir. 2003). In addition, as the Ninth Circuit has explained:

> Generally where a party has had no previous opportunity to develop evidence and the evidence is crucial to material issues in the case, discovery should be allowed before the trial court rules on a motion for summary judgment.

*Program Eng'g., Inc. v. Triangle Publ's., Inc.*, 634 F.2d 1188, 1193 (9th Cir. 1980); *see also Celotex*, 477 U.S. at 326 ("The parties had conducted discovery, and no serious claim can be made that respondent was in any sense 'railroaded' by a premature motion for summary judgment.").

## BACKGROUND

### A. The Oregon Lawsuit

Plaintiff, First Interstate Bank, is a Montana-chartered bank and a subsidiary of First Interstate BancSystem, Inc. Plaintiff is successor-in-interest by merger to the Bank of the Cascades, an Oregon-chartered bank that previously had its headquarters in Oregon. Defendants VHG Aviation, LLC ("VHG"); VGH Aviation, LLC ("VGH"); and TSE, Inc. ("TSE") are limited liability aviation companies based in Pennsylvania. Each owns or leases aircraft used for airplane charter flight services. Defendants James Valvano ("Valvano") and Christopher Gilchrist ("C. Gilchrist"), along with third parties Joseph Gilchrist ("J. Gilchrist") and Ray Hassey ("Hassey"), are members of VHG and VGH. Defendants Valvano and C. Gilchrist and third parties J. Gilchrist and Hassey are domiciled in Pennsylvania. Defendants VHG, VGH, TSE, Valvano, and C. Gilchrist are collectively referred to as "Defendants."

On December 9, 2015, the Bank of the Cascades loaned $960,000 to Defendant VHG, pursuant to the terms of a promissory note ("Note One") and an aircraft security agreement ("Aircraft Security Agreement One"). Also on December 9, 2015, the Bank of the Cascades loaned $2,026,744 to Defendant VGH, pursuant to the terms of a separate promissory note ("Note Two") and a separate aircraft security agreement ("Aircraft Security Agreement Two"). In addition, Defendants Valvano, C. Gilchrist, and TSE each separately and unconditionally guaranteed repayment of both Note One and Note Two. VHG is in default under Note One in the principal amount of $903,662 plus interest and expenses, for failure to make monthly payments. Similarly, VGH is in default under Note Two in the principal amount of $1,906,790 plus interest and expenses, for failure to make monthly payments. According to Plaintiff, the Bank of the Cascades gave written notice to VHG and VGH of the payment defaults and provided each with an opportunity to cure. Also according to Plaintiff, neither VHG nor VGH has cured the defaults, and the Bank of the Cascades elected to accelerate the indebtedness under each note pursuant to the terms of each note. Plaintiff also alleges that all conditions precedent to enforcement of each note have been performed or have occurred.

Each of the loan guarantees signed by Valvano, C. Gilchrist, and TSE contain the following permissive forum-selection clause at paragraph 16:

> With respect to any disputes between the parties, any proceeding by Lender [Bank of the Cascades] against Guarantor may be brought by Lender in a court of competent jurisdiction located in the State of Oregon (which court shall have jurisdiction to hear such matters), and Guarantor irrevocably consents and submits itself to jurisdiction in any such court.

That same paragraph also contains a waiver of each party's right to trial by jury. In addition, both Note One and Note Two state that they are governed by Oregon law, contain a waiver of the right to trial by jury, and recite that the "loan transaction evidenced by this Note has been applied

for, analyzed, approved and disbursed in the State of Oregon." Further, both Aircraft Security Agreements provide at paragraph 9(c):

> **Governing Law and Jurisdiction**
>
> The Note, this Agreement, and the Related Documents have been delivered to Lender [Bank of the Cascades] and accepted by Lender in the State of Oregon. The Note, this Aircraft Security Agreement, and the Related Documents will be governed by, construed and enforced in accordance with federal laws and the laws of the State of Oregon. If there is a lawsuit, Borrower consents to the jurisdiction of all state and federal courts located within Oregon, and Borrower agrees upon Lender's request to submit to the jurisdiction of the courts of the State of Oregon.

On September 19, 2017, Plaintiff sued VHG, VGH, Valvano, C. Gilchrist, and TSE in the Circuit Court for of the State of Oregon for the County of Multnomah, seeking recovery on the two promissory notes and related guarantees. Defendants were served on October 24, 2017. On November 22, 2017, Defendants removed the Oregon state court action to this federal court.

### B. The Pennsylvania Litigation

In three separate lawsuits, VHG, VGH, and TSE Global Aviation, LLC, respectively, sued Dumont Aircraft Charter, LLC ("Dumont") in the Court of Common Pleas, Lackawanna County, Pennsylvania.[1] Dumont timely removed these lawsuits to federal court in the Middle District of Pennsylvania, where they are now pending. These actions are identified as: (1) *TSE Global Aviation, LLC v. Dumont Aircraft Charter, LLC*, Case No. 3:17-cv-624-MEM (M.D. Pa.); (2) *VGH Aviation, LLC v. Dumont Aircraft Charter, LLC*, Case No. 3:17-cv-734-MEM (M.D. Pa.); and (3) *VHG Aviation, LLC v. Dumont Aircraft Charter, LLC*, Case No. 3:17-cv-735-MEM (M.D. Pa.). These three lawsuits are collectively referred to as the "Pennsylvania

---

[1] TSE Global Aviation, LLC is a limited liability company whose sole member is Defendant Valvano. TSE Global Aviation, LLC is affiliated with Defendant TSE, but TSE Global Aviation, LLC is not a party in the Oregon lawsuit and was not a signatory on any of the loans, notes, or guarantees at issue in the Oregon lawsuit.

Litigation." Plaintiff in the Oregon lawsuit, First Interstate Bank, is not a party to any of the lawsuits in the Pennsylvania Litigation.

In the Pennsylvania Litigation, VGH, VHG, and TSE Global Aviation, LLC, allege that VGH and VHG borrowed money from the Bank of the Cascades, as reflected in Note One and Note Two, for the purchase of certain private aircraft. VGH, VHG, and TSE Global Aviation, LLC further allege that Dumont orally represented to the Pennsylvania Litigation plaintiffs that the acquisition of certain private aircraft would generate a substantial amount of income and profit for those plaintiffs. Further, Dumont allegedly represented to those plaintiffs that Dumont would handle all of the chartering and maintenance of the aircraft. Dumont allegedly further represented that it would return to the plaintiffs in the Pennsylvania Litigation $80,000 per month after Dumont paid all of the debt service that those plaintiffs owed on the aircraft plus the overhead and operating costs of the hanger, pilots, crew, and fuel. Dumont also allegedly promised that it would fund a maintenance reserve for future service and larger maintenance expenses. In addition, Dumont allegedly represented that the aircraft to be acquired had been completely refurbished and were in good mechanical and working order, with minimal maintenance and service needed for the foreseeable future. The plaintiffs in the Pennsylvania Litigation also allege that, based on these representations by Dumont, these plaintiffs entered into aircraft management agreements and charter agreements with Dumont and purchased the aircraft that are the subject of Note One and Note Two, among other aircraft. Based on these allegations, the plaintiffs in the Pennsylvania Litigation assert against Dumont claims of fraudulent inducement, fraudulent misrepresentation, violation of Pennsylvania's Unfair Trade Practices and Consumer Protection Act, breach of fiduciary duty, breach of contract, unjust enrichment, rescission, and replevin.

## DISCUSSION

### A. Defendants' Motion to Transfer Venue

In *Atl. Marine*, the Supreme Court stated:

> In the typical case not involving a forum-selection clause, a district court considering a § 1404(a) motion (or a *forum non conveniens* motion) must evaluate both the convenience of the parties and various public-interest considerations. Ordinarily, the district court would weigh the relevant factors and decide whether, on balance, a transfer would serve "the convenience of parties and witnesses" and otherwise promote "the interest of justice." § 1404(a).
>
> The calculus changes, however, when the parties' contract contains a valid forum-selection clause, which "represents the parties' agreement as to the most proper forum." *Stewart* [*Organization, Inc. v. Ricoh Corp.*], 487 U.S. [22], 31 [(1988)]. The "enforcement of valid forum-selection clauses, bargained for by the parties, protects their legitimate expectations and furthers vital interests of the justice system." *Id.*, at 33 (KENNEDY, J., concurring). For that reason, and because the overarching consideration under § 1404(a) is whether a transfer would promote "the interest of justice," "a valid forum-selection clause [should be] given controlling weight in all but the most exceptional cases." *Id.*, at 33 (same).

*Atl. Marine*, 134 S. Ct. at 581.

Defendants argue that *Atl. Marine* involved a mandatory, rather than a permissive, forum-selection clause and, thus, has no application when the clause at issue is permissive, rather than mandatory. Defendants add that the loan guarantees in the pending case contain, at most, a permissive forum-selection clause, because they provide that any proceeding by the Bank of the Cascades against a guarantor "may be brought," rather than must be brought, "in a court of competent jurisdiction located in the State of Oregon." From this, Defendants argue, the Court should evaluate the traditional § 1404(a) factors without regard to the presence of a forum-selection clause. The Court agrees that the relevant guarantees contain only a permissive, rather than a mandatory, forum-selection clause, but does not agree that *Atl. Marine* is so limited.

Several district courts have disagreed over whether *Atl. Marine* must be confined to cases involving mandatory, as opposed to permissive, forum-selection clauses. *See, e.g., Federal Deposit Ins. Corp. v. Paragon Mortg. Serv's., Inc.*, 2016 WL 2646740, at *3 (N.D. Oh. 2016) (collecting cases on both sides). The Ninth Circuit has not yet addressed this question. The district courts that favor a narrow reading of *Atl. Marine* often focus on the text from that case that refers to "the parties' agreement as to the *most* proper forum" (emphasis added). As explained in *Paragon*, "[b]y indicating 'the most proper forum,' the Supreme Court could only be referring to mandatory clauses as permissive clauses only authorize jurisdiction in a forum but do not require it. A mandatory clause, on the other hand, indicates that jurisdiction is proper only in the selected forum." *Id*.

I respectfully disagree with the analysis in *Paragon*. First, the Supreme Court in *Atl. Marine* did not expressly limit its holding to cases involving mandatory, as opposed to permissive, forum-selection clauses. Second, the phrase "the most proper forum" does not imply that no other forum could also be proper. Finally, the rationale explained by the Supreme Court in *Atl. Marine*, which borrowed from Justice Kennedy's concurrence in *Stewart*, is that "the enforcement of valid forum-selection clauses, bargained for by the parties, protects their legitimate expectations and furthers vital interests of the justice system." *Atl. Marine*, 134 S. Ct. at 581. The protection of the parties' bargain and their legitimate expectations does not depend on whether the forum-selection clause is mandatory or permissive. When one party sues another in a forum that is expressly consented to in a permissive forum-selection clause, it would thwart the first party's bargain and legitimate expectations if the second party were to obtain a transfer to a different forum merely because the second party persuaded a court that the other forum would be more convenient.

In this case, the Bank of the Cascades and the Defendant guarantors bargained and agreed that the Bank of the Cascades may bring an action in Oregon to enforce a guarantee against the guarantors. The Bank of the Cascades, or to be precise, its successor-in-interest, has brought just such a lawsuit. To allow the Defendant guarantors to avoid this forum by arguing that it is inconvenient to litigate in Oregon would fail to respect the bargain of the parties and would fail to protect their legitimate expectations. That result should not occur, at least in all but the most exceptional case. Because the Court concludes that *Atl. Marine* applies, even in a case involving a permissive forum-selection clause, and the pending dispute is not an exceptional case, the Court need not consider the private interests of Defendants in resolving their motion to transfer.

The Court, nevertheless, would reach the same conclusion even if it were required to evaluate all of the factors of § 1404(a) described in *Jones*, 211 F.3d at 498-99. The first three factors in *Jones* favor denying Defendants' motion to transfer. First, as recited in the two aircraft security agreements: those agreements, the two notes, and the "Related Documents" (which include the guarantees) "have been delivered to Lender [Bank of the Cascades] and accepted by Lender in the State of Oregon." Second, the relevant documents provide that Oregon law governs this dispute, and this Court presumably is more familiar with Oregon law than is the federal court in Pennsylvania. Third, the Plaintiff chose to sue in the forum that the parties contractually agreed would be appropriate. (The result might have been different if Defendants had filed the first lawsuit against Plaintiff in Pennsylvania, assuming that personal jurisdiction could have been had against Plaintiff in that state.) The fourth factor may favor transfer, but the fifth, sixth, and seventh factors are generally neutral.

Finally, the eighth factor addresses "the ease of access to sources of proof." Although Defendants assert that this factor favors transfer, the Court disagrees. The Court has reviewed

Defendants' response in opposition to Plaintiff's Motion for Summary Judgment. Substantively, it does not appear that Defendants challenge the factual bases of Plaintiff's *prima facie* claims. Instead, as discussed below, Defendants seek additional time to determine whether they may be able to establish a meritorious affirmative defense, such as equitable estoppel, unclean hands, breach of the implied covenant of good faith and fair dealing, or violation of Oregon's Uniform Commercial Code. The sources of proof for any of these potential affirmative defenses are more likely to be found in Oregon in the files of the Bank of the Cascades, or its successor-in-interest, than they are likely to be found in Pennsylvania. Thus, the eighth factor also favors denying Defendants' motion to transfer.

**B. Plaintiff's Motion for Summary Judgment and Defendants' Request under Rule 56(d)**

Defendants timely removed this lawsuit from Oregon state court on November 22, 2017. On December 13, 2017, Defendants filed their motion to transfer venue. Five days later, December 18, 2017, Plaintiff filed its motion for summary judgment. The parties have briefed both motions, but have not yet even commenced discovery. Although Defendants do not appear to challenge the factual bases of Plaintiff's *prima facie* claims, Defendants request a reasonable amount of time to determine whether they may be able to establish a meritorious affirmative defense, such as equitable estoppel, unclean hands, breach of the implied covenant of good faith and fair dealing, or violation of Oregon's Uniform Commercial Code. As explained by Defendants, they seek discovery of the relevant files of the Bank of the Cascades and possibly one or more depositions. Plaintiff represents that it has begun gathering the relevant documents, which Plaintiff reports do not appear to be particularly voluminous or burdensome to locate. Also, at least one principal actor from the Bank of the Cascades is deceased. Thus, allowing Defendants to have a reasonable opportunity to take discovery will not be particularly time-consuming or burdensome for either party. Defendants' motion under Rule 56(d) is allowed.

**CONCLUSION**

Defendants' Motion to Transfer Venue Pursuant to 28 U.S.C. § 1404(a) (ECF 10) is DENIED. Plaintiff's Motion for Summary Judgment (ECF 13) is DEFFERED. The Court allows Defendants 60 days from the date of this Opinion and Order to take discovery needed to respond to Plaintiff's Motion for Summary Judgment. The Court shortens Plaintiff's time to respond to any document requests, requests for admission, and interrogatories propounded by Defendant to 14 days from receipt. Plaintiff also shall promptly make available for deposition any witnesses whom Defendants seek to depose who are employed by or otherwise under the control of Plaintiff. Not later than May 1, 2018, Defendants may file a supplemental response to Plaintiff's Motion for Summary Judgment. Plaintiff may file a supplemental reply not later than May 15, 2018. If Plaintiff's Motion for Summary Judgment is denied, the Court will allow all parties additional time to complete pretrial discovery.

**IT IS SO ORDERED**.

DATED this 1st day of February, 2018.

/s/ Michael H. Simon
Michael H. Simon
United States District Judge